Statement op Facts Appertaining to the Merits.
The contract between plaintiffs’ transferror and the defendant, dated March li-th, 1898, was one of sale in which the former plaintiffs’ transferror (Taylor), sold sugar house machinery to the latter (Sentell) consisting of a vacuum pan and adjuncts or attachments made up of the pan, eondensors, coils, centrifugals, engines, and other parts for which defendant bound himself to pay the sum of six thousand one hundred and fifty dollars. He, plaintiffs’ transferror, in the same deed, sold other machinery to the defendant, consisting of one Newell Natipnal Cane Shredder, and parts and pieces connected therewith, for which defendant bound himself to pay to the transferror (Taylor) the sum of twenty-five hundred dollars. The defendant obligated himself to pay one-half of the whole price cash on delivery, which was in the Spring of 1898, and the remainder on December 15th, 1898. He, the vendor, retained a vendor’s lien to secure the credit portion. Defendant’s complaint is that the machinery is not what vendor represented and guaran? teed, but that, on the contrary, much of it was in an imperfect condition, some of it broken, out of proportion, worn out and unfit for use, the use of which by him resulted in loss, rendering necessary the replacing of pieces, repairs, and the buying of certain parts, employment of labor, and other expenses not contemplated when he bought the machinery. He alleges that the amount so paid out exceeded seventeen hundred dollars, of which four hundred dollars was for a certain new en? gine which the vendor was unable to deliver without this advance on the price, and further, on account of this defective machinery, that he has had to expend other large sums of money in the saving of his sugar crop, exceeding five thousand dollars; that a large part of the machinery will have to be replaced; and, in consequence, the vendor or his transferees have no claims on the deferred payments. Plaintiffs’ transferror, Taylor, and the defendant both testified. A number of other witnesses were heard. We take up for review, in the first place, the testimony of the latter.
*1956 The vendor to Taylor who originally sold the centrifugals and their appurtenances testified that they were sold to some one in Vermillion parish in 1896, who failed to pay for them, and that they were recovered and subsequently sold to the defendant, Sentell, by Taylor. The two years that this machinery remained in Vermillion parish unpacked would have no bearing, and would not be of the least importance were it not that the defendant sets up 'that in that time it rusted and deteriorated. This machinery had been in use for quite a number of years prior to the sale to the defendant. This witness testified that the machinery was in first class condition, all being new with the exception of the four centrifugals and the mixer, which were sold as second-hand machines. ITe said he had no personal knowledge of the condition of the machinery at the time it was delivered to defendant, Sentell, as he had seen it (he last time just prior to Ocober, 1896.
Another witness, a son of the witness whose testimony we have just summarized, testified that the condition of the centrifugals was first class when they were shipped from Pennsylvania to Louisiana, in 1896, taking into account that they were second hand machines; that all parts which showed use had been overhauled, and, if found defective, the defects were remedied; that the baskets of these centrifugals were taken apart and new sheets substituted for the old ones; that the machines were carefully inspected before shipment; and that the balance of the machinery, consisting of a vacuum pan and accessories, were built from new material and were carefully built and erected in the works before shipment. ,
This machinery was shipped to the Rose Hill plantation in Louisiana, to which it was sold, but where it remained idle two years, when it was sold to Taylor, and he sold it to the defendant. In his testimony, this vendor corroborated the foregoing testimony, and stated that the contract before referred to, in which he *was the vendor, was complied with by him in every way.
We may as well state here that the centrifugals had been in use since 1813; that they were overhauled and repaired in 1890; that they were crated and sent to Abbeville, where they remained two years, when they were sold by W. R. Taylor to defendant, who shipped them to his plantation, where they were unpacked and'erected in his sugar house. An expert was sent by one of the attorneys for one of the plaintiffs, to de *1961 iendant’s plantation, in December, 1898, to examine into the causes of •complaint urged by the defendant, Sentell, against the machinery. He this expert, was on the place about four and a half hours, and saw the machinery in operation. He testified that two of the centrifugals were in use while he was at the defendant’s áugar house; the others were broken; but that one of the operating centrifugals was not properly adjusted; and that the centrifugals, while he was there, were in the ■charge of a man who had been employed by the American Sugar Refinery in New Orleans. He, this expert, testified further that to manage or operate centrifugals, one should possess both a mechanical knowledge -of the working of these machines, and practical experience with centrifugals. It appears from his testimony that the centrifugals were suspended by means of a bracket connected with what is known as the mixer. The mixer, an asserted defective part of the machinery, is the machine which mixes up the mascuite, which then falls from a spout into the centrifugals, then this mascuite is turned at such a rate that the molasses is separated from the sugar. The sugar then falls into wheelbarrows and is carried off and put into barrels. When the spindle of the centrifugal is properly adjusted and suspended, said this expert, if. the engineer gives it proper attention, it will operate quite a length of time without requiring the least repair. He said further: “if any one of these ma•chines is properly erected and carefully looked after, it does not require any further plumbing.” If the mixer gets out of line, the machine will get out of plumb, not otherwise. This witness stated that the two machines which were being worked were in perfect order. He also states that the mixer was not properly adjusted and the whole of his testimony leads to Ihe conclusion that 'the centrifugals were operating, as well as could be expected, of second hand machines. In fine, this is the trend of the witnesses for the plaintiff; while on the part of the defendant, the testimony is, in the main, to the contrary.
The mechanical engineer who erected the machines for the defendant is spoken of by the other witnesses as being quite competent. This engineer testified that parts of the machinery were broken; that some parts were new and some were old and some were badly proportioned; that there were so many defects about it that he advised the defendant not -to have anything to do with it, even after-it had been delivered, and was •on defendant’s plantation; that it was difficult to do anything satisfac *1962 tory with it. His description of the different parts of the machinery is lengthy and not such as to lead any one to believe that they were fit for ase. It looked like “a lot from an old junk shop”, said this witness while describing' the pieces in detail. “The hubs on the shafts were not all alike. There were three of them that were complete and one of them that was not. We had' to put on extra collars and patch them up the best we could.” These objections were! particularly directed against the centrifugals. He also thought that the mixer was defective. This witness further states: “I had some conversation with Mr. Taylor when he came up and took the measurements for those mixer stands. I made objection to a number of things, and he told me that there was one-half of the purchase money held back on the contract to amply secure Mr. Sentell against loss. I told Mr. Sentell that I did not consider that any security at all, if that machinery gave out in grinding- time. I wanted machinery there that would fill the bill”. At another time, while still testifying, the witness said, that Taylor told him, witness, to go ahead and put it (the machinery) up and whatever was lacking’, he would make good, he would make it satisfactory, and there was a guarantee of one-half of the purchase price held back, or something to that effect. There were portions of the machinery in which it was impossible to discover the defects before erecting it and this was especially true of the centrifugals, as there is nothing with which to test them to see if right, until mascuite is put into them.
We are informed by this witness that in due time Mr. Taylor supplied the missing pieces of the machinery, by others, to which pieces this witness refers as satisfactory. He also says that some attempt was made by him to remedy the objection to the mixer, which was not quite large enough, and this also worked satisfactorily enough. This witness testified that in erecting the machinery, he had with him on the work some-men who were first-class, and in addition, some cheaper labor, as is usually the case in erecting- sugar house machinery; among them he had a skilled mechanic and blacksmith, and that after everything had been adjusted properly, the operation of making sugar was commenced. After two days, the centrifugals wabbled so as to render it difficult to-work them at all. “They were so worn and gone, you couldn’t work them at all”, the witness testified. Centrifugals are, or should be, balanced at the shop from which they are shipped. These were not balanced when received and an unbalanced centrifugal will break off, if *1963 unbalanced to any extent. This witness also said that “the sugar ran nice; it was fancy prime yellow sugar they made, and they hadn’t run. off any low grade goods.”
Another witness, who had the experience of many years, went, during-grinding, to defendant’s place, at his request, to see the condition of the-machinery, and more particularly, the centrifugals and mixer. He says .that the machines were second-hand, and made up of different partsTher'e were only two of the centrifugals in question on the place when he made his visit; the other two had been broken and shipped away sometime previously. He found the mixer in a bad condition and everything was badly worn. With reference to the machinery, he said: “I should say that it had been erected in a very substantial manner.” This witness says that if one of these machines ran, say ten days, with proper handling, it would run the whole season. lie also said that the mascuite was. unusually tough and heavy in 1898 and that it gave some trouble.
We insert here a letter from W. R. Tyalor to G. W. Sentell, a copy of’ which will be found in the record:
“New Orleans, December 11th, 1898.
“Mr. G. W. Sentell, Bunkie, La.
“Dear Sir — I have hunted the town over and find only one new Weston (Morris make) machine at Haubtman & Loeb, for which they ask $450.
“None of the other shops have any, but Murphy has two Hepworths-. en route from New York, ordered about ten days ago.
“I find a set of three Hepworths which Haubtman says he overhauled in the shop and guarantees to be in good working condition, and are-ready for immediate delivery; price $1250.
“I also find four Westons of American Tool and Machine Co. make,. at one of the refineries, which need some repairs, and which, by working-night and day, could be shipped in a couple of days; price $1200.
“All of these machines I would have to pay cash for when shipped. I can get you four Hepworths from N. Y. in about one week in good condition for $800 each, if you can use your present driving gear for this season, which I think can be done, but wired you again to-night ashmg; you to mail plan of Morris machines by special delivery so I can see-how it can be worked in. You would have to pay for these machines and deduct from Morris’ accounk,. and another season I will furnish a-new mixer. (Italics ours.)
(Signed) “W. R. Taylor”'
*1964 With the foregoing, we close our summary of the facts. In the decision we will refer to such other incidents or circumstances arising between the parties as may be deemed necessary to a decision of the issues.
The judgment appealed from condemns the defendant to pay C. B. Fee, one of the plaintiffs, the sum of eleven hundred and three 44-100 dollars, with interest, and condemns him to pay to the other plaintiff, Morris, twenty-five hundred dollars, with interest, each with vendor’s lien.
We are only announcing a principle which no one denies when we state that the vendor, unless warranty is waived, warrants the thing sold .as fit for the particular purpose for which it was bought. The contract sets forth that the centrifugals were “in a perfect condition.”
We will not fall into the error of supposing that a second-hand machine can do the work of a new one, but it must be fit to do the work the contract shows was intended. After its acceptance by the vendee, who knows its condition, as complete and satisfactory, he is no longer in a position to urge objection. We think that as relates to the bulk or principal part of the machinery, defendant must be held to have accepted the machinery and to owe the price. He made more than one million and a quarter pounds of sugar with it, valued at about fifty-five thousand dollars gross, and is therefore without ground to complain of that part which held out during the grinding season. It is incumbent on the buyer to discover all such defects, as are discoverable on simple inspection of the thing he buys. The jury and the judge of the lower court decided that all the defects were discemable on simple inspection and that the buyer was warned and his attention called to the defective condition of the machinery by a mechanical engineer in his employ. ’Vendor and vendee, none the less, determined to erect the machinery. The buyer, in our judgment, is without the right to a diminution of the price for any defect discoverable on simple inspection. The purchase price retained by the vendee could only cover defects in. machinery not’ discoverable on inspection. This conclusion, we think, covers all the machinery (from the price of which to some extent, the verdict of the jury and the judgment of the court have already made some deduction) except three , of the centrifugals. The other machinery, the pan etc., to which we have referred, did all the work required of it during the taking off the crop. This can not be said of the centrifugals. The work of making sugar had progressed very little when one *1965 of them flew all to pieces, another broke down, and a third became of very little use.- These machines did not work satisfactorily from the beginning. The evidence shows that the hidden defects could not be discovered by mere inspection. Two of the -witnesses said that they, the centrifugals, could only be tested, with any degree of certainty, by use in sugar making. Plaintiff urges that the oil used, the gummy mascuite, ignorant handling by employes while working them, and defective workmanship in the erection of them, are the causes of their breakdown. We have not found that the oil used was a disturbing force. If the oil had caused the bursting of one, the breaking down of another and the disabling of a third, the fourth would certainly have felt its bad effect. The testimony regarding the maseuite is very inconclusive. The power was the same for the four machines, one engine being used for all; the gearing was similar; the same superintendent superintended the erection of them all; the same mechanics erected them; and the same force handled them during the grinding season. Two broke and another was of very little use, while the fourth, with some new machines, did the work. We must conclude that the fault was not with the oil used, the maseuite, the manner of erecting them, nor with the manner of working them, but with the machines themselves. These facts are strongly corroborative of the testimony for the defendant in support of the charge that die defect was in the machines. It must be borne in mind, with reference to their use, that they had been in use for many years. Vendor did not disclose to the vendee the number of years they had been in use; on the contrary, he represented that they had been in use only a comparatively short time. The machines were old, and, after-many years of use, they were renovated and packed away. They remained packed for some time. It is cause for little wonder, after all, that they went to pieces in ordinary usage. The vendor realized that these machines were not what they should have been, and in his letter copied above he proposed to charge up his vendor in consequence. We have no testimony before us which would enable us to Ax the value of the centrifugals.
It is, therefore, adjudged, ordered and decreed that the verdict of the jury and the judgment of the court are affirmed as relates to all the machinery sold by Taylor to the defendant, except as to three of the centrifugals, to which we have before referred. As to them, the law and the evidence being against plaintiffs, the verdict of the jury and the judgment of the court are annulled, avoided and reversed, and the case remanded to the lower court to ascertain the value of the centrifugals. *1966 destroyed, and to deduct it front tlie amount of the verdict of the jury, and as to the third centrifugal, to ascertain the difference between its value and that of a second-hand machine in good order (such as intended by the contract) and further deduct it from the judgment in favor of plaintiffs against defendant. These deductions are to be made in addition to those already decided upon by the jury and the judge of •.the lower court.
The appellees to pay costs of appeal.
Mr. Justice Blanchard took no part in this decision, not having Heard the argument at the bar.
One of the appellees, C. B. Fee, asks that the decree be so amended as to determine who is to bear costs, and to that end avers that he claimed :no rights upon or against the centrifugals which were part of the ma- • chinery sold by II. G. Morris to defendant, which part of the machinery •the court found was defective. He further avers, that the decree recites .•appellee is to pay costs, and that petitioner’s judgment having been af•firmed and not disturbed in any particular, he should not bear any of the •costs.
We understand that the District Court consolidated the causes, for "the reason that plaintiffs were respectively the assignees of Taylor, who ■was originally the creditor of the defendant.
Counsel for Fee contended in the lower court that these are two sep••arate cases, and that the court would have to pronounce two separate judgments, and that in case of Fee, the amount being less than two thou.sand dollars, the appeal would lie to the Circuit Court of Appeals, and the ease of Morris would be appealable to this court. The court held, in passing upon the question, that plaintiffs represented the Taylor claim, .and that the case was not as contended by counsel, that one verdict would determine the rights of each, and that one judgment would be written. Under that ruling, both cases came to this court on appeal, •consolidated, and both'claims were merged into one judgment. Each of the plaintiffs was a party. As relates to the costs as to who should pay "them, the judgment is indivisible.
The law directs that in case of the least change in the judgment on :appeal, the appellees shall pay costs. The judgment was amended as to Fee, although his claim remained as it was before the appeal. Having chosen to take his chances on appeal with the other plaintiff, we think that he is responsible for his proportion of the costs on appeal. The *1967 judgment was unquestionably amended, and he was a party to it for the amount he claimed.
It is therefore ordered, adjudged and decreed that our decree heretofore handed down in this case, be so modified that each of the appellees shall pay costs in proportion to the amount of his claim. As thus modified, our judgment remains and a rehearing is refused.